IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

FRANCES NELSON
     Plaintiff,

v.                      Case No.   3:11cv618/CJK

MICHAEL J. ASTRUE,
Commissioner of Social Security,
     Defendant.

---

## MEMORANDUM ORDER

This case is now before the court pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Frances Nelson's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34, and Supplemental Security Income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-83.  Ms. Nelson will be referred to by name, as claimant, or as plaintiff.  The parties have consented to Magistrate Judge jurisdiction, pursuant to 28 U.S.C. § 636(c), and FEDERAL RULE OF CIVIL PROCEDURE 73, for all proceedings in this case, including entry of final judgment.  (Docs. 5 & 6).  Upon review of the record before this court, I conclude that the findings of fact and determinations of the Commissioner are supported by substantial evidence.   The decision of the Commissioner, therefore, will be affirmed.

## PROCEDURAL HISTORY

Claimant has filed a Title II application for disability insurance benefits and a Title XIV application for supplemental security income. T. 17.[1] She appeared at two administrative hearings on August 10, 2010, T. 65-81, and February 23, 2011. T. 35-64. During the first such hearing, the Administrative Law Judge (ALJ) decided a consultative examination would be in order so she could better pinpoint the medical issues in the case. T. 78-79. In the interim between the two hearings, claimant was examined by Dr. Leo Chen, on November 4, 2010. T. 520-532. Following the second hearing, the ALJ issued an order unfavorable to Ms. Nelson. The Appeals Council of the Social Security Administration subsequently denied review. T. 1-6. The ALJ's order then became the final decision of the defendant Commissioner. In her memorandum of law, claimant raises two issues: 1) The Commissioner's decision should be reversed because the ALJ's finding that Ms. Nelson can sit for six hours is inconsistent with the medical opinion of Dr. Chen, whose opinion she gave significant weight; and 2) The Commissioner's decision should be reversed, because the ALJ erred in her application of the three-part pain standard. (Doc. 11, p. 6).

## FINDINGS OF THE ALJ

In the written decision the ALJ made a number of findings relative to the issues raised in this appeal:

1.    The claimant has the following severe impairments: hypertension, arthralgia, cervicalgia, GERD, myositis, mood disorder, probable generalized anxiety

---

[1] The administrative record, as filed by the Commissioner, consists of eleven volumes (doc. 9-1 through 9-11 ), and has 609 consecutively numbered pages. References to the record will be by "T." for transcript, followed by the page number.

disorder, history of polysubstance abuse reported in remission, degenerative disc disease of the lumbar spine, spondylolisthesis, pain disorder, personality disorder, and history of benign brain tumor with status post surgical excision.

2.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, subpart P, Appendix 1.

3.    The claimant has the residual functional capacity to perform sedentary work.  The claimant could sit for six hours in an eight hour workday.  Due to side effects of medication, psychological factors, and pain, claimant would be off task or at a non-productive pace for approximately five percent of the workday.  The claimant could only occasionally have contact with the general public and could not perform tandem projects with coworkers.

4.    Although claimant is unable to perform any past relevant work, she can perform jobs that exist in significant numbers in the national economy.

5.    Claimant has not been under a disability, as defined by the Social Security Act at any time relevant to the decision.

T. 19-28.

For purposes of this appeal, the ALJ's findings concerning items 3 and 4 above are most important.  The ALJ determined that the medical evidence does not support the degree of impairment alleged or the presence of disabling pain for the duration period stated by claimant.  T. 23.  Claimant's testimony of daily activities, along with the medical findings, are not, in the ALJ's view, consistent with the degree of debilitation alleged.  T. 23.  The ALJ concluded that residual functional capacity as formulated was consistent with the medical evidence.  T. 23-25.  The ALJ did not

discredit any of the physicians who spoke to claimant's physical condition, and afforded "significant weight" to the opinions of Dr. Chen, who performed the November 2010 consultative examination.  T. 25.

### STANDARD OF REVIEW

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied by the ALJ.  *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  With reference to other standards of review, the Eleventh Circuit has said, "'Substantial evidence is more than a scintilla . . . .'"  *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (*quoting Lewis*, 125 F.3d at 1439).  Although the ALJ's decision need not be supported by a preponderance of the evidence, "it cannot stand with a 'mere scintilla' of support."  *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986).  The reviewing court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Secretary[.]'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Nevertheless, a reviewing court may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which

detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). In sum, review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d. 1273, 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 2:10–cv–725–FtM–29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).[2] The recitation of medical and historical facts of this case, as set out below, is based upon my independent review.

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1.   If the claimant is performing substantial gainful activity, she is not disabled.

---

[2] The Eleventh Circuit speaks not only of independent review of the administrative record, but reminds us it conducts *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

2.    If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.    If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.    If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.    Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. *Chester v.  Bowen*, 792 F.  2d 129, 131 (11th Cir. 1986).   The Eleventh Circuit has explained the operation of step five:

> In practice, the burden temporarily shifts at step five to the Commissioner.  The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.   In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists.   The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations. *See Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999) (*quoting Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987) ('The shifting of the burden of proof is not statutory, but is a long-standing judicial gloss on the Social Security Act')).

*See Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001) (citation omitted).

Step five (or step four in cases where the ALJ decides a claimant can perform her past work) is where the rubber meets the road.  At that point, the ALJ formulates the all-important residual functional capacity.  Even where one or more severe impairments are established, the claimant must show that she cannot perform work within that residual functional capacity.  The ALJ establishes residual functional capacity, utilizing the impairments identified at step two, by interpretation of (1) the medical evidence, and (2) the claimant's subjective complaints (generally complaints of pain).  Residual functional capacity is then used by the ALJ to make the ultimate vocational determination required by step five.[3]  "[R]esidual functional capacity is the most [claimant] can still do despite [claimant's] limitations."[4] 20 CFR § 404.1545(1).

---

[3] "Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.)  We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."  20 C.F.R. § 404.1520(a)(4).

[4] In addition to this rather terse definition of residual functional capacity, the Regulations describe how the Commissioner makes the assessment:

(3) Evidence we use to assess your residual functional capacity.  We will assess your residual functional capacity based on all of the relevant medical and other evidence.  In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity.  (See § 404.1512(c).)  However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources.  (See §§ 404.1512(d) through (f).)  We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations.  (See § 404.1513.)  We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.  (See paragraph (e) of this section and § 404.1529.)[.]

Often both the medical evidence and the accuracy of a claimant's subjective complaints are subject to a degree of conflict, and that conflict leads, as in this case, to the points raised on judicial review by many disappointed claimants.

FACT BACKGROUND AND MEDICAL HISTORY[5]

Although Ms. Nelson takes issue with some conclusions reached by the ALJ, she has not disputed the ALJ's recitation of medical evidence.  This summary will rely in large part upon the ALJ's characterization of relevant medical history. Attention will first be given to evidence developed at the ALJ hearings.

Claimant Frances Nelson was 49 years old as of the date of the second hearing, February 23, 2011.  According to her testimony she lives with her 26 year old daughter and her 17 year old son.  She is 5'1" and weighs 187 pounds.  Claimant is not a high school graduate and has not obtained a GED, but did complete the twelfth grade.  Ms. Nelson has not worked since July 2008.  She has worked in the past as a cook and cashier.  She did hotel housekeeping and did construction work for about ten years.  She worked as a telemarketer over ten years ago.  She feels she is unable to do any work because it is hard for her to sit.  In addition, she is bothered by swelling of her hands and feet.  T.  9-41.

During a normal day claimant cannot sit very long so she walks around.  She sits when she cannot walk anymore.  She tries to keep her feet elevated.  Her medications, including Lortab and muscle relaxers, make her sleep a lot.  She does

---

20 C.F.R. § 404.1545(a)(3).

[5] Although intended to be thorough, and to provide an overview of claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as called for in the Analysis section.  Because the issues raised relate only to physical limitations, including pain, little attention will be devoted to the psychological maladies identified by the ALJ.

go to church sometimes, but only about once or twice a month.  During the day she reads the Bible and talks to some of her neighbors about God.  T. 41.

In addition to the swelling, Ms. Nelson has pain that shoots from the bottom of her feet up through the top.  She believes she can't do a sit down type of job because of the swelling in her ankles and feet.  T. 46.  The outsides of her legs throb, and her lower back aches when she sits for a long time.  After taking pain medication, the pain calms down, and she would rate the pain at that point at a six or seven.  T. 48.  Claimant's daughter helps with personal needs such as combing hair, bathing, and dressing.  T. 50.

Following is the ALJ's summary of the medical record.

On July 23,2009, the claimant was examined by Rogelio Samson, M.D. at the Escambia Community Clinic. Dr. Samson stated that the claimant "presents with a complaint of myalgia. The onset of the myalgia has been gradual and has been occurring in a persistent pattern for years. The course has been constant."  As to the physical examination, Dr. Samson determined that the claimant had a "normal gait and station and normal muscle strength and tone in all extremities."  Dr. Samson stated that the claimant had "sciatica" and he prescribed an anti-inflammatory medication. In a follow-up examination, the claimant was examined by Dr. Samson on November 10, 2009. As to the claimant's pain level, Dr. Samson stated that the claimant's "joint pain is described as moderate." [emphasis added].  Dr. Samson also stated that the claimant has "recently quit drug use about 8 months ago. Used Nasal Cocaine." [emphasis added].  Dr. Samson stated that the claimant had a "normal gait and station and normal muscle strength and tone in all extremities." More recently, the claimant was examined by Dr. Samson in a follow-up examination on September 24, 2010. Dr. Samson stated that the claimant's pain level is the same: "The joint pain is described as moderate."  These medical findings are clearly not disabling. Moreover, I find that the claimant's credibility is diminished as the claimant

reported that she used nasal cocaine after the alleged onset date of disability.  (References to exhibits have been deleted).

On March 15, 2009, the claimant had a lumbar spine x-ray at the Imaging Center of Pensacola, Florida. The film was reviewed by G. Terral King, M.D. and he stated that the claimant had "degenerative disc disease at L4-S 1 of at least moderate severity with associated Grade 1 spondylolisthesis; this appears to be closed arch degenerative spondylolisthesis due to severe facet disease." I find that the claimant's allegations of pain and back impairment have been considered and accommodated by the foregoing residual functional capacity.

On March 30, 2009, the claimant was examined by Richard W. Lucey, M.D. in a DDS physical consultative examination. Dr. Lucey stated that the claimant was "complaining of chronic progressive diffuse muscle joint pain over the last few years. She has been treated at Escambia Clinic in the meantime, and has tried various NSAIDs and muscle relaxants without much benefit. More recently, she was given Lortab for pain management only." As to the claimant's hypertension, the claimant reported that she has been on "medication for blood pressure for two years. She is unaware of any complications or end organ damage." Concerning the claimant's upper extremities examination, Dr. Lucey stated that the claimant's "grip strength is impossible to assess, as she has complete giveaway pain with any attempts at testing grip strength. There are no joint deformities, atrophy, or sensory deficits. Full range of movement of all major joints ... " [emphasis added].  As to the lower extremities examination, Dr. Lucey determined: "Peripheral circulation intact. Full range of movement of all major joints. No effusion, crepitus, laxiety or joint deformities." [emphasis added]. With regards to the claimant's back examination, Dr. Lucey noted: "Posture is erect. Gait is normal. Heel, toe and tandem walking without evidence of weakness or ataxia. There are no localized tender points, but generally diffuse tenderness over her entire trunk. No spasm on direct palpation." Dr. Lucey did not opine that the claimant was disabled and did not recommend any work-related limitations.   Moreover, Dr. Lucey indicated that the claimant had no joint deformities.

On July 3, 2009, Clarence Louis, M.D., (DDS reviewing physician), completed and signed a Physical Residual Functional Capacity Assessment.  Dr. Louis indicated that the claimant could occasionally lift/carry less than twenty pounds with ten pounds frequently. Additionally, Dr. Louis stated that the claimant could stand and/or walk about six hours in an eight-hour workday. Dr. Louis stated that the claimant had no postural, manipulative, visual, communicative, and environmental limitations. Dr. Louis noted that the claimant "alleges arthritis, a history of brain surgery, and vision problems. Claimant acknowledges that she is able to do chores around the house, she plants flowers, does gardening, and she is able to shop." Once again, Dr. Louis did not opine that the claimant was disabled and did not recommend any work-related limitations.

On November 4, 2010, the claimant was examined by Leo Chen, M.D. in a DDS physical consultative examination. Dr. Chen stated that the claimant reported that she had "numbness and tingling in her right upper and lower extremities with associated weakness and pain. She does not use a cane or walker. She has had minimal treatments since her symptoms began. She reports no injury to her neck or her back. She reports her left side, specifically her arms and legs, have no specific complaints." [emphasis added]. As to the physical examination, Dr. Chen noted that the claimant had a "limited range of motion of her neck and back. She does have full passive range of motion of her extremities. Straight leg raises are negative. There are no signs of joint discoloration, deformity, or inflammation. Her grip strength is 3+ to 4/5 on the right, 5/5 on the left. She however is able to perform fine manipulations such as turn the doorknob and operate the zipper on her jackets. There is no obvious spasm in her back today." On the same day, Dr. Chen completed and signed a "Medical Source Statement of Ability to do Work-Related Activities" form. Dr. Chen indicated the claimant could lift/carry less than ten pounds frequently and up to twenty pounds occasionally. Dr. Chen also stated that the claimant could sit for four hours, stand for three hours, and walk for two hours total in an eight-hour workday. Additionally, Dr. Chen noted that the claimant would occasionally climb stairs, ramps, ladders, or scaffolds, balance, stoop, kneel, and crouch;

but never crawl. Moreover, Dr. Chen stated that the claimant should avoid operating a motor vehicle. I find significant weight to the opinions of Dr. Chen and the claimant's allegations of pain and limitations have been considered and accommodated by the foregoing residual functional capacity.

More recently, the claimant was examined by an emergency room physician at Baptist Hospital on January 5, 2011. The claimant's chief complaint was the loss of right arm control. The staff physician prescribed a CT brain scan and the film was treated by Amit G. Gupta. Dr. Gupta that the claimant had a "postoperative changes for a previous left parietal craniotomy; no hemorrhage or mass effect; [and] no evidence of abnormal intracranial enhancement." The claimant was not admitted to the hospital and she was discharged on the same day.

Concerning the claimant's mental impairments, the claimant was examined by Jose C. Montes, M.D., at Lakeview Center in an office visit on October 5, 2009. Dr. Montes stated that the claimant was a "student at PJC Adult High trying to get her GED."  As to the substance abuse, the claimant reported to Dr. Montes that the claimant has "been dry and sober from alcohol and clean from drugs since July 8, 2003."  This assertion that the claimant stopped all drug usage in 2003 is inconsistent with the medical evidence in Exhibit 12F, where Dr. Samson stated in an office visit of November 10, 2009, the claimant "recently quit drug use about 8 months ago. Used Nasal Cocaine." [emphasis added]. Additionally, Dr. Montes that the claimant has been arrested "for possession of cocaine and marijuana, and then for violation of probation for not reporting. However, information revealed that she had legal charges for grand theft, petty theft, battery, and uttering a forged instrument, all related to getting money for drugs." As to the mental status examination, Dr. Montes stated the claimant was "casually dressed with appropriate grooming. She presented with good eye contact. Thought process is spontaneous, however, she seems to not be forthcoming in giving information. She denies suicidal or homicidal ideation. Psychomotor did not show any agitation or retardations. Speech is fluent and non-pressured. Her insight and judgment is fairly

constricted. She is alert and oriented. Cognition and memory is intact. She is mentally competent to assess the risk and benefits of releasing or withholding information, as well as mentally competent to participate in her own treatment planning." [emphasis added]. Dr. Montes determined that the claimant had a "mood disorder [and] history of alcohol and polysubstance abuse." More recently, the claimant was examined by Dr. Montes in a follow-up examination of March 9, 2010. Dr. Montes stated that the claimant "is taking the Paroxetine and Seroquel without any problems or adverse effects. She stated that she is sleeping better at night. Her depression is improving as well." [emphasis added]. As to the mental status examination, Dr. Montes noted that the claimant's "mood is less depressed. She engaged in the interview readily. Thought process is goal directed. Thought content is coherent with no perceptual disturbances. She denies hallucinations or paranoid ideation. She denies suicidal or homicidal ideation. She is alert and well oriented. Cognition and memory is intact. She is mentally competent to participate in her own treatment planning.   Current MGAF-R: 70." I find that the claimant's discrepancies as to when she stopped her cocaine abuse seriously diminished her credibility."

On October 14, 2010, the claimant was examined by John F. Duffy in a DDS mental consultative examination. Dr. Duffy noted in the outset that the claimant is "very slow as she seats herself. All of this is because of her arthritic pain. Through the interview she would get up at times and slowly walk and stand with her back against the wall for five or ten minutes. As the time here progressed, she was less focused on her pain and did not draw so much attention to it." As to the claimant's mental status examination, Dr. Duffy stated that the claimant was "alert, oriented, and cooperative. Speech was clear, and language functions were intact. Thought processes were organized and goal-directed ... Energy level is undisturbed. She maintains strong interest in her family and enjoys them. She says her daughter has a large yard, and they all grill out. If she were not in pain, she says everything would be fine, and she would not have any mood problems. There are no hallucinations, delusions, obsession, compulsions, panic symptoms, phobias or suicidal plan or intentions."   In conclusion, Dr. Duffy determined that the

claimant "is mainly focused on her arthritic pain and presents with grimacing and exaggerated physical symptoms. I certainly do not doubt that there is physical distress, but the presentation of symptoms is extreme. If she could receive more relief from her pain, she feels that she would be functioning well emotionally and behaviorally in all areas of her life." [emphasis added]. I find that Dr. Duffy did not opine that the claimant was disabled.  (Record citations deleted).

T. 23-26.

Concerning residual functional capacity, established by the ALJ as sedentary, the order reflects these conclusions:

The claimant's medically determinable impairments could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. That is, while the claimant's limitations due to her impairments and pain have resulted in a significantly decreased residual functional capacity, but she is not precluded from all work in the enormous economy of the United States. The residual functional capacity accommodates the moderate pain from her joint pain, as well as her concentration reducing side effects and mental impairments; have resulted in a significantly decreased residual functional capacity, from the full range of skilled very heavy work to a reduced range of unskilled sedentary work. The claimant has not shown that her medical condition warrants additional limitations in any identified basic work activity for the duration period. The residual functional capacity is supported by, *inter alia,* the claimant's daily activities as described in her testimony and her total lack of disabling objective medical testing. Despite the lack of mental work related limitation in any medical records; the claimant's allegations of mood disorders and anxiety has been considered and accommodated by the foregoing residual functional capacity as the claimant is precluded from all skilled and semi-skilled work in the national economy. Although the claimant has received medical treatment for the allegedly disabling

impairments, that treatment has been essentially routine and conservative in nature. Concerning the claimant's joint pain and arthritis, the claimant's objective medical findings are inconsistent with a disabling level of pain. Moreover, the claimant never sought or received treatment from a specialist, like a rheumatologist or a neurologist. With regards to the claimant's medical treatments, the record reflects significant gaps in the claimant's history of treatments.

Furthermore, both the mental and physical treatments have been routine and conservative. Although the claimant has alleged various side effects from the use of medications, the record indicated generally that those side effects are mild and would not interfere with the claimant's ability to perform work activities in any significant manner.

Based on a review of the medical evidence of record, as well as the claimant's testimony at the hearing, I find that the evidence does not support the claimant's allegations of totally incapacitation symptomatology. The record fails to document persistent, reliable manifestations of a disabling loss of functional capacity by the claimant resulting from her reported symptomatology. After considering the entirety of the record, I conclude that the claimant would not be precluded from performing the physical and mental requirements of some work activity on a regular and sustained basis.

T. 26-27.

## ANALYSIS

Noting that the ALJ afforded "significant weight" to the opinions of Dr. Chen, plaintiff takes issue with the ALJ's conclusion that residual functional capacity included the ability to sit for six hours during an eight hour workday.  As plaintiff notes, and as the ALJ recorded in the order, Dr. Chen said that Ms. Nelson would be able to sit only for a total of four hours in an eight hour workday.  Claimant contends that the ALJ's order is "devoid of any justification for this inconsistency" (Doc. 11,

p. 6), and must, therefore, be disapproved.  The legal standard for assessing residual functional capacity is set out *ante* at note 4 and accompanying text.

Dr. Chen examined claimant between the first and second hearings, presumably pursuant to the ALJ's request, stated at the first hearing, to obtain a consultative exam to better pinpoint the issues in the case.  Appended to Dr. Chen's exam notes is a checklist form, "Medical Source Statement of Ability to do Work-Related Activities (Physical)."  T. 527-532.   Section II of that form asks the examiner to check how many hours the individual can sit without interruption, and total in an eight hour workday.  In response, Dr. Chen's notation indicates claimant could sit for ten minutes uninterrupted and for a total of four hours during the day.  During the hearing, the vocational expert had testified that the ten minute sitting limitation before one would have to change postures, along with "a marked impairment in terms of ability to conform to regular customary standards of punctuality and absenteeism and tardiness," would render such an individual incapable of sustaining any job.  T. 63.  According to Social Security Regulation 83-10, sedentary work would generally require sitting for about "6 hours of an 8-hour workday."  Claimant thus argues that Dr. Chen's limitation will rule out the sedentary designation assigned by the ALJ as residual functional capacity.  (Doc. 11, p. 8).

Plaintiff does not particularly describe or note Dr. Chen's actual medical report.  In that report, Dr. Chen said the X-rays show spondylolisthesis at L-5, S-1, grade I in nature.  T. 522.  Ms. Nelson has minimal to mild degenerative changes in the knees.  T. 522.  She has no acute bony injury.  T. 522.  She has limited range of motion in the neck and back.  T. 522.  She has full range of motion of extremities and an atalgic gait on the right.  T. 522.  The back shows no obvious spasm.  T. 522.

Relevant to the point at issue, Dr. Chen assessed chronic low back pain and lumbar spondylolisthesis.  T. 523.  Although noting that "her ability to perform physical activity may be somewhat limited," Dr. Chen makes no note in the actual medical report concerning the sitting limitation, and specifically does not identify a malady that would produce such limitation.  T. 523.  Logical deduction would suggest that the limitation ascribed in the checklist would be attributable to the chronic low back pain, noted by Dr. Chen, and described by Ms. Nelson at the hearing.  The first point raised by claimant, then, cannot be decided without consideration of the second point–application of the pain standard.

As this court is well aware, pain is treated by the Regulations as a symptom of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."  *Accord* 20 C.F.R. § 416.929.  The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[6] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

---

[6]*Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir. 1986) (the case originally adopting the three-part pain standard).

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (*citing Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also Adamo v. Comm'r of Soc. Sec.,* 365 F. App'x 209, 214 (11th Cir. 2010) (*quoting Wilson*, 284 F.3d at 1225); *Elam v. R.R. Ret. Bd*., 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson,* 284 F.3d at 1226.  Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (*citing Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1259 (M.D. Fla. 2005).  The presence or absence of evidence to support symptoms of the severity claimed, however, is a factor that can be considered.  *Marbury*, 957 F.2d at 839-840;  *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  Where the ALJ fails to

do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true.  *Holt*, 921 F.2d at 1223; *MacGregor*, 786 F.2d at 1054.[7] Although the Eleventh Circuit does not require an  explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.  *Dyer*, 395 F.3d at 1210. And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence.  *Wilson*, 284 F.3d at 1225-1226; *Jones v. Dep't of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F. Supp. 2d at 1259.

Here, the objective medical evidence does not confirm the severity of the alleged pain, nor are the objectively determined medical conditions of a severity that would be reasonably expected to cause the level of pain claimed.  Objective diagnostic testing showed normal or minimal findings.  T 23-26, 329, 331, 342-43, 397, 407, 522, 544, 555-56, 569-70, 589-91.   Physical examinations were

---

[7]Of late, the question of remedy in cases involving complaints of pain has been discussed in this circuit with some regularity.  *See, e.g., Lawton v. Comm'r of Soc. Sec.*, 431 Fed. App'x. 830, 835 (11th Cir. 2011) (remanding for further consideration where ALJ "failed to adequately explain the weight he afforded to the opinions of . . .treating and examining physicians."); *Howell v. Astrue*, No. 8:10-CV-2175-T-26TGW, 2011 WL 4002557, at *3 (M.D. Fla. Aug. 16, 2011) (remanding where ALJ failed to provide a meaningful explanation for credibility determination); *Freeman v. Astrue*, No. 1:10-CV-997-TFM, 2011 WL 2551181 (M.D. Ala. June 27, 2011) (remanding where ALJ "made a credibility determination, but did not adequately explain it."); *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011) (same).  This question will not be reached in the present matter.

unremarkable or findings were minimal. T. 23-26, 23-26, 317-18, 323-28, 335-36, 344-56, 365-66, 385-86, 401-05, 415, 441, 457, 506, 509, 521-26, 535-36, 539-40, 544, 548, 565-66, 580-81, 596-97.   Plaintiff never saw a specialist or rheumatologist for her allegedly debilitating pain.   T. 26.   The ALJ also noted gaps in medical treatment.   T. 26.   *See Dyer*, 395 F.3d at 1211 (noting that ALJ properly rejected plaintiff's complaints of pain where the pain had not required routine or consistent treatment, and plaintiff often went months or years between pain complaints to his physicians).

Also central in a pain case is the need for a credibility determination concerning a plaintiff's complaints of pain.   Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").   People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.   This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand v. Heckler*, 761 F.2d 1545, 1548-49 (11th Cir. 1985), *vacated on other grounds*, 774 F.2d 428 (11th Cir. 1985).   It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence."

*Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Ms. Nelson asserts that she satisfies the requirement of an underlying medical condition that could be reasonably expected to produce her pain. (Doc. 11, p. 12). The ALJ did not, however, entirely disagree with this proposition. As the ALJ stated, "The claimant's medically determinable impairments could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the. . . residual functional capacity assessment." T. 26. The ALJ also noted those matters implicit in the credibility determination. Claimant participated in a range of activities of daily living. The medical chart does not reflect results of medical testing to support total disability. Claimant's medical treatment has been "essentially routine and conservative in nature." T. 26. She has never sought or received treatment from a specialist, such as a rheumatologist or neurologist. The medical record reflects significant gaps in history of treatments. A consultative psychologist, Dr. Duffy, noted that at the beginning of his interview, claimant would rise at times, walk slowly, and stand with her back against a wall for several minutes. As the interview progressed, however, she did not draw so much attention to her complaints of pain. T. 516. Tests administered by Dr. Duffy showed the patient exaggerates symptoms. T. 518. She grimaces and exaggerates physical

symptoms.  T. 519.  Dr. Duffy concluded that she has some physical distress, but that her "presentation of symptoms is extreme."  T. 519.

Claimant was in the past an admitted abuser of cocaine.  Comparing her statements to various physicians concerning when she quit drug use, the ALJ noted a significant inconsistency. T. 25.  Claimant told Dr. Samson she had quit the cocaine in early 2009.  T. 440.  Just a month before Dr. Samson charted this, however, claimant told a psychiatrist, Dr. Montes, that she had been clean from drugs for over six years.  T. 468.  The ALJ, as finder of fact, stated, "I find that the claimant's discrepancies as to when she stopped her cocaine abuse seriously diminishes her credibility."  T. 26.

Dr. Samson, mentioned above, examined plaintiff over a period of time, going back to 2007, at the Escambia Community Clinic.  T. 344-360, 437-461.  As noted by the ALJ, Dr. Samson found that claimant had normal gait and normal muscle strength and tone.  T. 23.  Samson described claimant's pain on several occasions as "moderate."  T. 23.  In conjunction with the review of Dr. Samson's chart, the ALJ noted that "claimant's credibility is diminished as the claimant reported that she used nasal cocaine after the alleged onset date of disability."  T. 23.

The ALJ also noted a consultative examination by Dr. Richard Lucey on March 30, 2009.  T. 24.  Dr. Lucey could not assess grip strength because claimant had "complete giveaway pain with any attempts at testing...."  T. 24.  Dr. Lucey did not recommend any work related limitations, and found "subjective" complaints of discomfort, despite full range of motion of all major joints.  T. 402.  As to the back complaints, Dr. Lucey found normal heel, toe, and tandem walking without evidence of weakness or ataxia.  He noted a "mildly diminished" range of movement of the low

back (thoracolumbar).  Claimant had no spasm, but showed diffuse tenderness on palpation.  T. 402.  Straight leg raising tests were negative.  T. 402.

The ALJ also credited a Physical Residual Functional Capacity Assessment performed by Dr. Clarence Louis on July 3, 2009.  T. 24; T. 413-420.  Dr. Louis believed claimant had a medically determinable impairment.  He believed claimant's complaints and also believed her reports of daily activities including gardening, shopping, and housework.  T. 417.  Dr. Louis believed, as reflected on the check-off form, claimant could sit, with normal breaks about six hours in an eight hour workday.  T. 414.  In remarks particular to claimant, Dr. Louis noted normal lower extremities, normal gait, full range of motion in all areas except the lumbar spine, which was "mildly diminished."  T. 414-415.

The credibility findings of the ALJ are supported by substantial evidence.  The ALJ correctly noted, explicitly and implicitly, that claimant has medically determinable impairments.  Nevertheless, no physical findings or history of treatment point to a condition or combination of conditions that might be expected to cause disabling pain, and the ALJ's order, viewed in its entirety, is consistent with this observation.  I find it inescapable that Dr. Chen's limitation of four hours sitting was based entirely upon the claimant's subjective reports, as Dr. Chen's objective findings are no more impressive or dramatic than are those of other physicians.  This particular limitation is, at bottom, a conclusory statement that is not particularly supported by the actual findings of Dr. Chen or any other physician.  Even with a treating physician, the ALJ is not required to give controlling weight to conclusory statements.  *See, e.g.*, *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986).  Here, the ALJ has cited ample evidence for discounting certain subjective complaints.

Plaintiff cannot identify evidence beyond such subjective complaints to support the conclusory assertion as to limitations upon sitting.  I also note, in support of the ALJ's formulation of residual functional capacity, that, "[a] consultative examination, that is, a one-time examination by a physician who is not a treating physician, need not be given deference by the Commissioner." *McSwain v. Bowen,* 814 F.2d 617, 619 (11th Cir. 1987).  Here, the ALJ did not discredit the findings of Dr. Chen.  Instead, the ALJ concluded that the unexplained conclusion offered by Dr. Chen regarding plaintiff's capacity to sit is not supported by the record.  I conclude, therefore, that the ALJ's assignment of sedentary residual functional capacity is supported by substantial evidence.

ACCORDINGLY, it is ORDERED:

1.  The decision of the defendant Commissioner is AFFIRMED and plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income are DENIED.

2.  The clerk is directed to close the file.

At Pensacola, Florida, this 4th day of  September, 2012.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**